Anoush Hakimi (SBN 228858)
*anoush@handslawgroup.com*
Peter Shahriari (SBN 237074)
*peter@handslawgroup.com*
Ani Avetisyan (SBN 266679)
*ani@handslawgroup.com*
Laura Steven (SBN 332168)
*laura@handslawgroup.com*
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>1310 PCH LLC, a California limited liability company; and DOES 1-10,<br><br>          Defendants. | Case No. 2:20-cv-10751-GW-GJS<br><br>Hon. George H. Wu<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.*<br><br>DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

Plaintiff James Shayler (hereinafter referred to as "Plaintiff") complains of Defendants 1310 PCH LLC, a California limited liability company; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.    PARTIES

1.    Plaintiff James Shayler had two knee replacement surgeries which did not go well.  The surgeries resulted in him having severe pain in his knees and caused his legs to become very weak.  He has a pinched sciatic nerve that runs down his lower back and down his left leg.  The pinched sciatic nerve causes his left leg to give out sporadically.  He occasionally loses balance when his left leg gives out.  He also has neuropathy affecting the bottom of his feet.  This causes a burning sensation in his feet.  He has spinal arthritis, spinal stenosis, spondylosis, and a herniated disk.  He experiences severe back pain on a regular basis.  He feels sciatica nerve pain in his left hip, which also causes him to limp.  He has difficulty walking and standing and relies on a cane or walker for mobility.  He also suffered an injury back when he was a firefighter that required surgery on his left arm.  He has limited use of his left arm and hand.  He cannot put much pressure on his left arm and hand.  His left hand has atrophied.  Plaintiff is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (*see* Cal. Civ. Code §§ 51, *et seq.*, 52, *et seq.*), the Americans with Disabilities Act (ADA) (*see* 42

U.S.C. § 12102, *et seq.*), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard by the State of California.  Plaintiff is a California resident with physical disabilities.

2.     Defendant 1310 PCH LLC, a California limited liability company, owned/owns the property (the "Property") located at or about 1310-1312 Pacific Coast Hwy, Hermosa Beach, CA 90254.  The Property is a shopping center which houses multiple businesses.

3.     There is a business establishment on the Property named "Beach Cities Cleaners" (hereinafter, "the business"), located at 1312 Pacific Coast Hwy, Hermosa Beach, CA 90254.

4.     The businesses are public accommodations as defined by 42 U.S.C. § 12181(7).

5.     DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

6.      Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

7.      Plaintiff visited the public accommodation facilities owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.      JURISDICTION & VENUE

8.      This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4), for violations of the ADA.

9.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts, and arising out of the same transactions, is also brought under the UCRA, which expressly incorporates the ADA.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this district, and Plaintiff's cause of action arose in this district.

### III.   FACTS

11.     The Property is a facility which is open to the public and houses

business establishments.

12.     The Property has been newly constructed and/or underwent

remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed

to comply with California access standards which applied at the time of each new

construction and/or alteration, and/or failed to maintain accessible features in

operable working condition.

13.     Plaintiff visited the Property during the relevant statutory period on

three (3) separate occasions, in February 2019, November 2019, and January 2020,

to patronize the business.

14.     Defendants did not offer persons with disabilities with equivalent

facilities, privileges, and advantages offered by Defendants to other patrons.

15.     Plaintiff encountered barriers, both physical and intangible, that

interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services,

privileges, and/or accommodations offered at the Property.

16.     Parking is one of the facilities, privileges, and advantages offered by

Defendants to patrons of the Property.

17.     However, there was no accessible parking for disabled patrons at the

Property.  The parking space designated for disabled persons did not comply with

FIRST AMENDED COMPLAINT

the ADA.

18.     The parking area did not comply with the applicable California

Building Code (CBC).

19.     When Plaintiff visited the Property, he experienced access barriers

related to parking, signage, entryways, and paths of travel.

20.     Plaintiff encountered the following barriers, conditions, and/or

violations at the Property:

**VIOLATION of 2010 ADA Standards for Accessible Design (ADAS) §
502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 502.3.3.**  (<u>"NO PARKING" –
ground surface sign.</u>)  The words "NO PARKING," which are required to be

painted in the adjacent loading/unloading access aisle, are not provided.  The

loading/unloading access aisle is entirely missing.  As a result, non-disabled

patrons park in the space adjacent to the designated disabled parking space,

blocking Plaintiff from being able to safely disembark from his vehicle.  Cars

and trucks block/park in the space adjacent to the designated disabled

parking space because the required loading/unloading access aisle and "NO

PARKING" lettering has not been provided.  Plaintiff requires extra space to

be able to safely exit his vehicle and unload his mobility device(s).  When an

access aisle is not provided (available) for him to use, Plaintiff has difficulty

FIRST AMENDED COMPLAINT

disembarking his vehicle, which poses a greater risk of injury to him and can cause him humiliation and/or frustration.

**VIOLATION of 1991 ADA Standards for Accessible Design (ADAS) § 4.6.4; 2010 ADAS § 502.6; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.** (Designated disabled parking space sign.)  The sign identifying the designated disabled parking space was non-compliant.  The sign was positioned/placed so that its corresponding designated disabled parking space could not be clearly identified.  These issues negatively affected the visibility, legibility, and/or effectiveness of the sign, which made it more difficult for patrons and parking enforcement to determine which space was intended for the sole use of disabled persons.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons.  Clear signage that explicitly identifies the designated disabled parking space will deter others without disabilities from parking there.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.** (Access aisles must adjoin accessible route.)  The adjacent loading/unloading access aisle must adjoin an accessible route to an accessible entrance.  It does not.  The adjacent

7

loading/unloading access aisle is missing.  Plaintiff cannot access the Property safely unless there is an access aisle onto which he can disembark from his vehicle with his cane or walker.  Plaintiff needs a parking space located nearest to the business entrance, with an adjacent access aisle that adjoins an accessible, protected route, so that he can safely travel to the business entrance.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5.**  <u>(Route/path from parking – uneven surface.)</u>  The path of travel from the designated disabled parking space to the business entrance contains abrupt vertical edges and/or variations over ¼ inch (and no ramp is provided).  The path of travel has damaged ground that is uneven and contains pavement distresses (i.e., the ground surface is not flush or flat).  Plaintiff, a cane or walker user, cannot fully enjoy the premises when such conditions are present.  These excess/ abrupt changes in level pose risks to Plaintiff, including that he may trip/fall, and/or that his cane or walker may become trapped in an uneven surface.

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.**  (No loading/unloading access aisle.) The loading/unloading access aisle which is required to be adjacent to the designated disabled parking space is missing entirely.  This made/makes it difficult for Plaintiff to safely disembark from his car with his cane or walker.  Plaintiff requires extra space to be able to safely exit his vehicle with his mobility device(s).  When there is no access aisle, Plaintiff has difficulty disembarking his vehicle and unloading his mobility device(s), which poses a greater risk of injury to him and can cause him humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.**  (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff, a cane or walker user, needs a dedicated path of travel, free of obstructions and vehicles, where (on which) he can use his mobility device(s).  It is dangerous for Plaintiff to navigate while using a cane or walker when there is no safe, protected, accessible route of travel; thus, the violation interferes with his ability to fully access the premises.

**VIOLATION of 2010 CBC § 1127B.1.** (Path of travel into building entrances.) There is no accessible path of travel into the building entrances. Plaintiff, a cane or walker user, needs a dedicated path of travel, free of obstructions and vehicles, where (on which) he can use his mobility device(s). It is dangerous for Plaintiff to navigate while using a cane or walker when there is no safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC § 1127B.3; 2019 CBC § 11B-216.6.** (Directional signage.) There is no International Symbol of Accessibility (ISA) sign at the front entrance to the business. There is no directional signage showing an accessible path of travel to an accessible entrance. Plaintiff, a cane or walker user, faces an increased risk of injury if he is required to backtrack because he cannot find an accessible entrance into the business. Thus, he requires clear signage directing him to the accessible entrance(s). Accessible entrances should be marked with an ISA.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC §§ 11B-502.8, 11B-502.8.2.** (Off-street unauthorized parking sign.) The tow away sign(s)

(white sign(s) stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space).  The requisite sign(s) are not posted.  Plaintiff cannot access the business safely if he cannot use a designated disabled parking space which leads to an adjacent access aisle and an accessible route of travel protected from other vehicles.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons.  Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking space will deter others without disabilities from parking there.

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.**  (Length of parking space.)  The designated disabled parking space measures less than eighteen feet (18') long, which makes it difficult for Plaintiff to park in the designated space.  Plaintiff needs to be able to park in the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for him, as opposed to individuals without disabilities, to maneuver

about the Property.

**VIOLATION of 1991 ADAS §§ 4.3.7, 4.8.1; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.** (Excess slopes; no compliant ramp.)  The route of travel has slopes greater than 1:20 (5%), but there is no compliant ramp.  It is difficult for Plaintiff to walk with his mobility device on sloped surfaces that do not provide the safety features of a compliant ramp.  These excess changes in level pose risks to Plaintiff, including that he may fall.  Given his mobility issues, it is difficult and dangerous for Plaintiff to walk on excess slopes.  The lack of a compliant ramp, with its attendant safety/accessibility features, denied/denies Plaintiff full and equal use or access by making it difficult/harder for him to traverse the property/route with his mobility device(s).

**VIOLATION of 1991 ADAS § 4.8.2.; 2010 CBC § 1133B.5.3.** (Least possible slope of ramp.)  There is no compliant ramp, with the least possible slope, leading into the business.  The curb ramp exceeds the maximum running slope allowable.  Plaintiff, who uses a cane or walker, has difficulty with his mobility device(s) on slopes that are not compliant ramps.

12

**VIOLATION of 1991 ADAS § 4.8.2; 2019 CBC § 11B-405.2.**  (Maximum slope of ramp.)  Ramp runs shall have a running slope not steeper than 8.33% (1:12).  The slope of the path of travel leading into the business was greater than 8.33%.  This exceeds the maximum running slope allowable.  It is difficult and dangerous for Plaintiff to walk on excess slopes, and/or sloped surfaces that do not provide the safety features of a compliant ramp.  The presence of excessively steep running slopes (and the absence of a compliant ramp) denied/denies Plaintiff full and equal use or access by making it difficult/harder for him to walk/traverse the property/route with his mobility device(s).

**VIOLATION of 1991 ADAS § 4.8.6; 2010 ADAS § 405.3; 2010 CBC § 1133B.5.3.1.**  (Maximum cross slope of ramp.)  The cross slope of the ramp was greater than two percent (2%).  Plaintiff, who uses a cane or walker, has difficulty with his mobility device(s) on non-compliant sloped surfaces.

**VIOLATION of 1991 ADAS § 4.8.4; 2010 ADAS § 405.7; 2010 CBC § 1133B.5.4.**  (Level ramp landings.)  There was no compliant ramp with level ramp landings at the top and bottom of the ramp.  Plaintiff needs level ramp landings to safely maneuver with his cane or walker.

FIRST AMENDED COMPLAINT

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 11B-502.6.4.2.**
(Faded paint – designated disabled parking space lines.)  The striping and markings for the designated disabled parking stall is dilapidated and in need of repair and/or maintenance.  The paint used for the designated disabled parking space is so worn and aged that it can hardly be seen.  The International Access Symbol was so faded and worn that it could barely be seen.  This makes it unclear where the actual parking space is and makes it difficult for Plaintiff to park in the designated space.  Plaintiff, a cane or walker user, needs to be able to use an accessible parking space, with an adjacent access aisle (which is not provided), to safely access the Property.  Clear signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space.  Plaintiff cannot access the business safely if he cannot use a designated disabled parking space which leads to an adjacent access aisle and an accessible route of travel.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons.  If the space reserved for disabled patrons is not properly marked, then others without disabilities may park in the space.

14

FIRST AMENDED COMPLAINT

21.     Plaintiff personally encountered the foregoing barriers, conditions, and/or violations.

22.     These barriers, conditions, and/or violations denied Plaintiff full and equal access, and caused him difficulty, humiliation, and/or frustration.

23.     The barriers, conditions, and/or violations existed during each of Plaintiff's visits in February 2019, November 2019, and January 2020.

24.     Furthermore, although Plaintiff did not personally encounter all of the following barriers, conditions, and/or violations, Plaintiff is informed that the following barriers, conditions, and/or violations, which affect access for mobility-impaired cane or walker users like him, remain at the Property:

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.**  (Slope of designated disabled parking space.)  The designated disabled parking space has surface slopes greater than two percent (2%).  Given his mobility issues, Plaintiff needs to be able to traverse on a level surface.  Sloped ground surfaces pose risks to Plaintiff, including that his feet, cane, and/or walker may catch on the sloped ground, causing him to fall.

FIRST AMENDED COMPLAINT

**VIOLATION of 2010 ADAS § 404.2.4.4; 2019 CBC § 11B-404.2.4.4.**

(Slope of ground surface within clearances.)  The landing in front of exterior doors may not have a slope exceeding two percent (2%).  The landing directly in front of the entrance door of the business has a slope exceeding two percent (2%).  Plaintiff requires a level surface to navigate the business entrance with his cane or walker, and to open the business door(s) without difficulty.  The barrier deterred/deters Plaintiff from visiting the Property because the presence of excess slopes would make it difficult, uncomfortable, and/or unsafe for Plaintiff to traverse (walk across) the landing at the entrance doors with his cane or walker.

**VIOLATION of 2010 ADAS §§ 303.3, 303.4; 2019 CBC §§ 11B-303.3, 11B-303.4.**  (Front door entrance threshold and weather strip changes in level.)  The front door entrance threshold and weather strip at the business has changes in level greater than one-half inch (1/2") but no ramp is provided.  This makes traversing this area difficult because it forces Plaintiff to step higher (raise his feet/legs more), and/or lift his cane or walker higher, and presents a risk that Plaintiff's cane, walker, and/or feet may catch on the uneven surface.  The barrier deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff

to walk/pass through the entrance with his cane or walker.

**VIOLATION of 1991 § ADAS § 4.3.8; 2010 CBC § 1133B.7.1.** (Walks/ sidewalks – changes in level.)  The walk leading into the business does not have a continuous common surface because there are abrupt changes in level of more than one-half inch (1/2").  These excess changes in level pose risks to Plaintiff, including that he may trip/fall, and/or that his cane or walker may become trapped in an uneven surface.

25.    Upon information and belief, Plaintiff alleges that Defendants had actual knowledge that the foregoing architectural barriers prevented access, and that their noncompliance with the ADA Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

26.    Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

27.    Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

**FIRST AMENDED COMPLAINT**

28.     Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

29.     Defendants refuse to remove these barriers.

30.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is not a mishap; it was/is the result of intentional actions or inaction.

31.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

//

//

18

FIRST AMENDED COMPLAINT

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq.*)

(Against All Defendants)

32.     Plaintiff alleges and incorporates by reference each and every

allegation contained in all prior paragraphs of this complaint.

33.     Title III of the ADA prohibits discrimination against any person, on

the basis of disability, in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public

accommodation, by any person who owns, leases, or operates a place of public

accommodation.  42 U.S.C. § 12182(a).

34.     Defendants discriminated against Plaintiff, by denying him "full and

equal enjoyment" and use of the goods, services, facilities, privileges, and/or

accommodations they offered, during each visit, and each incident of a deterred

visit.

35.     The acts and omissions of Defendants herein were/are in violation of

Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36,

*et seq.*

36.      Pursuant to the ADA, discrimination is a "failure to make reasonable

modifications in policies, practices or procedures, when such modifications are

FIRST AMENDED COMPLAINT

necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii).

37.     The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable").  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at 28 C.F.R. Part 36, Appendix A.

38.     If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

39.     Defendants can remove the architectural barriers at their facility

FIRST AMENDED COMPLAINT

without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

40.     Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

41.     On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

42.     The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

43.     Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

44.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with

FIRST AMENDED COMPLAINT

disabilities, unless the entity can demonstrate that making such modifications

would fundamentally alter the nature of such goods, services, facilities, privileges,

advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

45.     Defendants violated the ADA by failing to make reasonable

modifications in policies, practices, or procedures related to the Property when

these modifications were necessary to afford (and would not fundamentally alter the

nature of) the goods, services, facilities, privileges, advantages, or accommodations.

46.     Plaintiff seeks a finding from this Court that Defendants violated the

ADA, so that he may pursue damages under California's Unruh Civil Rights Act.

47.     Here Defendants' failure to make sure that accessible facilities were

available to, and ready to be used by, Plaintiff was/is a violation of law.

48.     Plaintiff would like to continue to frequent the Property, which is close

to his home.  However, he is deterred from doing so because he has been

discriminated against and is aware of accessibility barriers at the Property.

49.     Among the remedies sought, Plaintiff seeks an injunction order

requiring compliance with federal and state disability access laws, and remediation

of the existing access violations (i.e., removal of the existing barriers) at the

Property.

//

//

22

FIRST AMENDED COMPLAINT

# V. SECOND CAUSE OF ACTION:  VIOLATION OF THE

# UNRUH CIVIL RIGHTS ACT

## (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

50.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

51.     California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

52.     California Civil Code § 51 also states, in part:  "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

53.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

54.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

55.     Defendants' above-mentioned acts and omissions have violated the

23

UCRA by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

56.     Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code §§ 51(f), 52(a).

57.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a)-(c).

58.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. He seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense (i.e., for each occasion that Plaintiff was denied full and equal access).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.  Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2.  Damages under the Unruh Civil Rights Act, which provides for actual

FIRST AMENDED COMPLAINT

damages and statutory minimum damages of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant

to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: March 9, 2021          THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:   /s/ Anoush Hakimi
     ANOUSH HAKIMI, ESQ.
     Attorney for Plaintiff James Shayler

25