Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler, an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>1310 PCH LLC, a California limited liability company; and Does 1-10,<br><br>         Defendants. | Case No.:  2:20-cv-10751-GW-GJS<br><br>Hon. George H. Wu<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   August 16, 2021<br>Time:  8:30 a.m.<br>Courtroom:  9D |

# <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................. 6

II.  RELEVANT FACTS ............................................................. 8

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ........................ 10

IV.  PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA

     CLAIM FOR VIOLATIONS RE: LACK OF ACCESSIBLE PARKING,

     ROUTE(S), AND SIGNAGE ................................................. 11

     A.   Plaintiff is Disabled ................................................. 14

     B.   Defendant Owns a Place of Public Accommodation ..................... 15

     C.   The Property Has Barriers That Can Be Readily Removed ............ 15

          1.   Lack of Accessible Route(s). ................................. 17

          2.   Lack of Proper Signs ......................................... 18

          3.   Lack of Accessible Parking Space and Access Aisle .......... 19

     D.   Plaintiff Encountered Violations, and Is Deterred from

          Returning ....................................................... 21

V.   REMEDIES ................................................................. 23

VI.  CONCLUSION ............................................................... 25

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986)..................................................................................11

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
      603 F.3d 666 (9th Cir. 2010) .................................................................12

*Botosan v. Paul McNally Realty,*
      216 F.3d 827, 833 (9th Cir. 2000) ......................................................... 15

*Celotex Corp. v. Catrett,*
      477 U.S. 317 (1986)..................................................................................15

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
      631 F.3d 939 (9th Cir. 2011) ...........................................................13, 16

*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust,*
      867 F.3d 1093 (9th Cir. 2017) ...............................................................22

*Doran v. 7-Eleven, Inc.,*
      524 F3d 1034 (9th Cir. 2008) .......................................................... 21-22

*Fortyune v. American Multi-Cinema, Inc.,*
      364 F.3d 1075 (9th Cir. 2004) ...............................................................24

*Lopez v. Catalina Channel Express, Inc.,*
      974 F.3d 1030 (9th Cir. 2020) ......................................................... 17-18

*Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992)..................................................................................21

*Moeller v. Taco Bell Corp.,*
      816 F. Supp. 2d 831 (N.D. Cal. 2011)...............................................13, 16

*Molski v. M.J. Cable, Inc.,*
      481 F.3d 724 (9th Cir. 2007) ..........................................................12, 23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

*Rush v. Denco Enterprises, Inc.*,
   857 F. Supp. 2d 969 (C.D. Cal. 2012) ........................................................16

**STATUTES, RULES, AND REGULATIONS**

ADA Standards for Accessible Design (ADAS)

1991 ADAS § 4.3.2(1) ...............................................................17

1991 ADAS § 4.6.3 ...................................................................19

2010 ADAS § 216.6 ..................................................................18

2010 ADAS § 404.2.4.4 ........................................................ 17-18

2010 ADAS § 502.3 ..................................................................17

2010 ADAS § 502.3.2 ...............................................................20

2010 ADAS § 502.4 ..................................................................19

2010 ADAS § 502.3.3 ...............................................................19

California Building Code (CBC)

2010 CBC § 1129B.3 ...........................................................19, 20

2019 CBC § 11B-502.2 ...............................................................20

2019 CBC § 11B-502.3.3 .............................................................19

Federal Rules of Civil Procedure

FRCP 56 ........................................................................... 10-11

United States Code

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

42 U.S.C. § 12182(a) ................................................................................ 11-12

42 U.S.C. § 12182(b)(2)(A)(iv) ................................................................ 13

42 U.S.C. § 12183(a)(2) ............................................................................ 13

42 U.S.C. § 12188(a) ........................................................................... 14, 23

42 U.S.C. § 12188(a)(2) ............................................................................ 23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

## I.      PRELIMINARY STATEMENT

Plaintiff James Shayler ("Plaintiff"), who is disabled, faced numerous obstacles in attempting to take advantage of the low prices offered at Beach Cities Cleaners (the "business" or "the cleaners"), located at 1312 Pacific Coast Hwy, Hermosa Beach, California 90230 (the "Property"). Ms. Shayler has several spinal issues, including spinal arthritis, spinal stenosis, spondylosis, and a herniated disk. These conditions severely impact his mobility, and he requires a cane and/or walker ("mobility device") to get around and access business facilities.

On three (3) separate occasions, Plaintiff had difficulty visiting the Property simply because Defendant 1310 PCH, LLC ("Defendant"), owner of the Property, refuses to perform the routine remediations necessary to make the Property accessible under the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12181, *et seq.*) and the Unruh Civil Rights Act ("UCRA") (California Civil Code § 51, *et seq.*).

Plaintiff moves for summary judgment because there is no dispute that, as an individual with disabilities, he has faced, and will continue to face, barriers to access at the Property. Specifically, the Property's parking, routes of travel, and signage are not ADA-compliant and present significant hurdles to Plaintiff's full use and enjoyment of the business. These violations are substantial, well-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

documented, and can be remediated with minimal time, expense, and impact on the business. These same obstacles also constitute violations of the UCRA.

During his visits, Plaintiff encountered a walkway with excessive changes in level. The route is excessively sloped and does not contain the safety features of a ramp, making it difficult for Plaintiff to safely travel to the business using his mobility device. Plaintiff also had difficulty determining where to park, and how to enter the cleaners, due to the lack of signage, including the lack of surface signage ("No Parking") in the access aisle.

Plaintiff's Certified Access Specialist (CASp), John Battista, found that *all* of these violations persist to this day. These violations can be fixed for less than $20,000 in total, which is less than what Defendant pays in property taxes for the Property on an annual basis.

In light of these ongoing barriers, Plaintiff seeks an order requiring Defendant to remediate existing violations, including by repaving the route of travel and landing to the business entrance; providing designated disabled parking and an adjacent access aisle of appropriate size; and posting/and or painting appropriate signage. Plaintiff also seeks damages under the UCRA in the amount of $16,000 for the three visits where he encountered these access barriers as well as for one deterred visit to the business.

2:20-cv-10751-GW-GJS

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ**

## II.     RELEVANT FACTS

Plaintiff is disabled. UF 1. He has several spinal issues, including spinal arthritis, spinal stenosis, spondylosis, and a herniated disk, which affect and impair his mobility. UF 2. Plaintiff also has nerve damage throughout his back, legs, and feet, which further impairs his mobility. UF 3. In addition, Plaintiff has several leg and foot issues, including complications from two knee replacement surgeries, bilateral osteoarthritis of the knees, and osteomyelitis in his foot which required hospitalization. UF 4. Plaintiff also has very limited use of one arm and hand. UF 6. As a result, Plaintiff has limited mobility and has difficulty walking and/or standing for longer than fifteen minutes at a time. UF 5. Plaintiff uses a cane to walk on a daily basis, but when his pain is especially bad, he must use a walker instead. UF 5. Because Plaintiff's mobility is severely impaired, he needs ADA compliant routes of travel, parking, and signage for full and equal access to public accommodations. UF 7. The State of California has issued Plaintiff a permanent disabled person parking placard as a result of his disabilities. UF 8.

Defendant owns the property located at or about 1312 Pacific Coast Hwy, Hermosa Beach, California 90230, which houses a laundry/dry cleaning facility named Beach Cities Cleaners which is open to the public. UFs 9-10. In February 2019, November 2019, and January 2020 Plaintiff visited the Property with the

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

intent to patronize the business, but he experienced difficulty, humiliation, and/or frustration upon encountering various barriers. UF 11.

Plaintiff needs adequate space to disembark from the vehicle and unload his mobility devices, but when he visited the Property, the designated disabled parking space and adjacent access aisle lacked adequate signage and were not the proper size, which made it difficult for him to park. UFs 13, 14. The lack of compliant signage, including a "No Parking" surface sign on the access aisle, did not effectively deter non-disabled individuals from parking in these areas. UF 14. Additionally, the designated disabled parking space was excessively sloped making it difficult for Plaintiff to safely disembark.

Plaintiff experienced additional barriers along the route connecting the designated disabled parking space (and/or access aisle) to the business entrance (the "route of travel"). When Plaintiff was at the Property, there were excess slopes in the route of travel connecting the designated disabled parking space to the business entrance. UF 12. Plaintiff did not see any directional signs posted indicating an accessible route and an accessible entrance, making it difficult for him to determine where to travel safely. UF 15.

Plaintiff filed his Complaint on November 25, 2020, alleging violations of the ADA and the UCRA. UF 16. On June 29, 2021, Plaintiff's Certified Access Specialist (CASp), John Battista, performed a site inspection and confirmed that

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

the above-referenced barriers Plaintiff encountered continue to be present on the Property. UFs 17-24. Many of the remediations identified in the CASp report are not costly compared to the value of the Property, would not take much time to fix, and would not have any impact on business operations. *See* UFs 31-38.

Plaintiff is aware of the existing barriers to access observed by his investigator. UF 25. The existing violations would impede Plaintiff's ability (i.e., would make it more difficult for him) to access Defendant's property. UF 26. Plaintiff is presently deterred from visiting the Property due to the existing violations. UF 27. Plaintiff intends and plans to return to the Property very soon, once existing violations have been remediated, including because the Property is conveniently located close to his friend's house and offers lower prices than other cleaners. UF 28.

Defendant concedes that the Property contains several access barriers that can be readily remediated. UFs 29-32.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56. To prevail on summary judgment, a moving party need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 250-252 (mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which a jury could find by a preponderance of the evidence that the non-movant is entitled to a verdict).

## IV.   PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA CLAIM FOR VIOLATIONS RE: LACK OF ACCESSIBLE PARKING, ROUTE(S), AND SIGNAGE

Under Title III of the Americans with Disabilities Act of 1990 ("ADA"), "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity

2:20-cv-10751-GW-GJS

that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc*., 603 F.3d 666, 670 (9th Cir. 2010), *citing Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

With respect to the third prong, the ADA applies not just to intentional discrimination, but also to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct – such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination – such as difficult-to navigate restrooms and hard-to-open doors – that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-945 (9th Cir. 2011) (internal quotes and citations removed for readability). "The third element – whether plaintiffs were denied public accommodations on the basis of disability – is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011), *citing Chapman*, 631 F.3d at 945. Discrimination under the ADA includes, "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).

Accordingly, a plaintiff may establish a claim for discrimination under the ADA by proving the following elements:

1. Plaintiff is disabled. 42 U.S.C. § 12182(a).

2. Defendant's facility is a place of "public accommodation," and, therefore, governed by Title III of the ADA. *Id.*

3. Defendant is a responsible party, i.e., owner, operator, lessor, or lessee. *Id.*

4. Defendant's facility contains an easily removable barrier that the defendant failed to remove. 42 U.S.C. § 12182(b)(2)(A)(iv).

5. Plaintiff actually encountered an unlawful barrier or has reasonable grounds for believing that he is about to be subjected to

discrimination as he would encounter such a barrier. 42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because Defendant failed to provide accessible parking, route(s) of travel, and signage. Plaintiff discusses each element of his claim below.

## A.      Plaintiff is Disabled

Plaintiff is disabled. UF 1. He has several spinal issues, including spinal arthritis, spinal stenosis, spondylosis, and a herniated disk, which affect and impair his mobility. UF 2. Plaintiff also has nerve damage throughout his back, legs, and feet, which further impairs his mobility. UF 3. In addition, Plaintiff has several leg and foot issues, including complications from two knee replacement surgeries, bilateral osteoarthritis of the knees, and osteomyelitis in his foot which required hospitalization. UF 4. Plaintiff also has very limited use of one arm and hand. UF 6.

As a result of these conditions, Plaintiff has limited mobility and has difficulty walking and/or standing for longer than fifteen minutes at a time. UF 5. Plaintiff uses a cane to walk on a daily basis, but when his pain is especially bad he must use a walker instead. UF 5. Because Plaintiff's mobility is severely impaired, he needs ADA compliant routes of travel, parking, and signage for full and equal access to public accommodations. UF 7. The State of California has issued

2:20-cv-10751-GW-GJS

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ**

Plaintiff a permanent disabled person parking placard as a result of his disabilities. UF 8. Thus, Plaintiff is disabled and entitled to the protections of the ADA.

### B.     Defendant Owns a Place of Public Accommodation

Defendant owns a place of public accommodation for purposes of the ADA. In *Botosan v. Paul McNally Realty*, the Ninth Circuit adopted a DOJ regulation that "both the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title III requirements." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000). According to the Ninth Circuit, public policy requires that "owners of public accommodations should not be permitted to contract away liability." *Id.* at 834.

Defendant 1310 PCH, LLC is the owner of the Property. UF 9. There is currently a laundry/dry cleaning facility called Beach Cities Cleaners on the Property, which is open to the public. UF 10. Thus, Defendant, as the landlord of a public accommodation, is liable for any violations of ADA title III requirements contained therein. There is no genuine dispute of material fact as to this element.

### C.     The Property Has Barriers That Can Be Readily Removed

There can be no genuine dispute that the property contains several architectural barriers that can easily be remediated.

"To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG').

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards, and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

Barrier removal is "readily achievable" when it is "easily accomplishable and able to be carried out without much difficulty or expense." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011). The Ninth Circuit recently established a framework for assessing whether barrier removal is readily achievable, based on several factors: A) nature and cost of action; B) overall financial resources of the facility, number of persons employed, effect on expenses and resources, or impact upon operation of the facility; C) overall financial resources of covered entity; and D) type of operation of the covered entity. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020). Acknowledging that plaintiffs may lack complete information, the Court further held that "plaintiffs are not required to address in detail each of the four factors to

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

meet their initial burden of plausibly explaining why it is readily achievable to remove an architectural barrier." *Id*.

Given that clear barriers to access exist in violation of the ADA, and there is credible evidence suggesting that the barriers can be readily remediated, Plaintiff now seeks summary judgment in his favor.

### 1.    Lack of Accessible Route(s)

Section 4.3.2 of the 1991 ADA Standards for Accessible Design (ADAS) states: "At least one accessible route within the boundary of the site shall be provided from … the accessible parking [and] public sidewalks … to the accessible building entrance they serve." 1991 ADAS § 4.3.2(1). Access aisles "shall adjoin an accessible route." 2010 ADAS § 502.3. Here, there was/is no accessible pedestrian route(s) leading from the sidewalk or parking area/access aisle to the business entrance.

There is no accessible route of travel from the designated disabled parking space and adjacent access aisle to the entrance of the cleaners because there are excessive slopes on the pavement and at the landing to the doorways. Section 404.2.4.4 of the 2010 ADAS provides: "Floor or ground surface within required maneuvering clearances shall comply with 302. Changes in level are not permitted." 2010 ADAS § 404.2.4.4. Exception 1 to this provision further

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

provides that "slopes no steeper than 1:48 [2.08%] shall be permitted." 2010 ADAS § 404.2.4.4, Exception 1.

Plaintiff's CASp report reveals slopes exceeding 2.08%, including slopes as high as 18.8%. UFs 23-24. Plaintiff encountered these slopes which made it difficult to navigate using his mobility devices and put his safety at risk. UF 12. The estimated cost level the route of travel so that it is no longer excessively sloped is $15,500 and should take three days to complete. UF 33. Defendant can afford to remediate this condition, especially considering the cost of the remediation compared to the value of the Property (more than $2 million). UF 36. Given that the slope along the landing is at places nearly ten times the allowable limit, the benefit of this remediation far exceeds its costs. Accordingly, there is no genuine dispute that the route of travel is excessively sloped and can be readily remediated. Plaintiff respectfully requests that this Court grant summary judgment as to the route of travel violations.

### 2. Lack of Proper Signs

The ADA mandates that signs directing individuals to the accessible entrance are posted when there is more than one entrance to a building, and not all entrances are accessible. 2010 ADAS § 216.6. Here, only one of the two entrances is accessible, and there is no signage directing individuals to the public entrance or

indicating an accessible route to the public entrance. UF 22. Posting the required signage would, at most, cost $45 and take one hour to complete. UF 34.

Plaintiff did not see any directional signs posted indicating an accessible route to an accessible entrance, making it difficult for him to determine where to travel safely. UF 15.

### 3.   Lack of Accessible Parking Space and Access Aisle

An access aisle must be provided next to a designated disabled parking space, and it "shall be part of an accessible route." 1991 ADAS § 4.6.3. Access aisles shall be clearly marked so as to discourage parking in them. 2010 ADAS § 502.3.3. CBC section 11B-502.3.3 states that "the words NO PARKING shall be painted on the surface within each access aisle." 2010 CBC § 1129B.3. Plaintiff's CASp confirmed that the hatch lines were missing from the access aisle, words "NO PARKING" were not printed on the access aisle as required. UF 18.

Additionally, the Property lacks an accessible parking space and access aisle. Section 4.6.3 of the 1991 ADAS provides: "The maximum surface slope within accessible parking areas or adjacent access aisles cannot exceed 2% slope in any direction." 1991 ADAS § 4.6.3; 2010 ADAS § 502.4. Here, Plaintiff's CASp identified slopes as high as 3.8% in the designated disabled parking space and adjacent access aisle. UF 21.

Accessible parking spaces must measure eighteen feet (18') long and five feet (5') wide. 2019 CBC § 11B-502.2; 2010 CBC § 1129B.3; 2010 ADAS § 502.3.2. Here, the designated disabled parking space measured just over fifteen feet (15") long. UF 19.

These issues act as barriers to Plaintiff's enjoyment of the Property. Plaintiff requires a clearly-marked access aisle, that is free from other vehicles, next to the designated disabled parking space to unload his mobility devices. UF 13. Plaintiff also has trouble disembarking from his vehicle and unloading his mobility devices when he is on a sloped surface. UF 13. Plaintiff also requires enough space to disembark from the car and unload his mobility devices, and it is difficult for him to safely do so when a parking space is too small. UF 13.

Remediation of these barriers is readily achievable. The estimated cost to level the designated disabled parking stall and adjacent aisle, to print "NO PARKING" on the loading/unloading access aisle, and to properly stripe the designated disabled parking area is $3,500 and should take three days to complete. UF 33. This process should not impact business operations. UFs 38. Defendant admits that restriping the parking space and providing an access aisle would not be costly and there are no reasons it could not be achieved. UFs 31-32. Defendant can afford to remediate these barriers, given the high value of the Property. UF 36.

Accordingly, Plaintiff respectfully requests that the Court grant him summary judgment with respect to the various violations in the parking lot.

### D. Plaintiff Encountered Violations, and Is Deterred from Returning

During his three visits to the property, Plaintiff encountered the barriers identified in Section IV.C *See* UFs 11-15. These barriers caused him difficulty, humiliation, and/or frustration. UF 11. He hopes to return and intends/plans to as soon as the barriers are removed, as the Property is located close to his friend's house and offers lower prices than other cleaners. UFs 25, 28.

Plaintiff also has constitutional standing to pursue injunctive relief for all accessibility barriers on the Property related to his disability. Generally, a plaintiff must meet three requirements in order to establish standing under Article III of the United States Constitution: (1) the plaintiff must have "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be a "causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

The Ninth Circuit has instructed that courts should take a "broad view" of constitutional standing in the context of ADA lawsuits. *Doran v. 7-Eleven, Inc.*,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

524 F.3d 1034, 1039-40 (9th Cir. 2008). Specifically, the Ninth Circuit has recognized a deterrent effect doctrine for purposes of the injury requirement, holding that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran*, 524 F.3d at 1040. In other words, a Plaintiff has constitutional standing if he "is threatened with harm in the future because of existing or immediately threatened non-compliance with the ADA." *Id.*

The Ninth Circuit further clarified that a plaintiff need not personally encounter a barrier to suffer an injury for standing purposes. Instead, "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of[,] or otherwise interfere with his access to[,] a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts." *Doran*, 524 F.3d at 1042, n.5.

Plaintiff's CASp inspector recently visited the Property and reported a multitude of barriers. UFs 17-24. Plaintiff is aware of the barriers that continue to

2:20-cv-10751-GW-GJS

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

exist on the Property and is deterred from returning until these obstacles have been remediated. UFs 25-28.

## V.    THE LACK OF ACCESSIBLE PARKING, ROUTE(S), AND SIGNAGE IS UNLAWFUL UNDER THE UCRA

The UCRA provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civil Code § 51(f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed in Section IV, Defendants violated the ADA. Thus, there has been a *per se* violation of the UCRA.

## VI.    REMEDIES

### A. Injunctive Relief

Plaintiff seeks injunctive relief pursuant to 42 U.S.C. § 12188(a). The injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. 42 U.S.C. § 12188(a)(2).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

As set forth above, Plaintiff may seek recourse for barriers he personally encountered, as well as for those he is aware of that cause him to be reasonably deterred from visiting the public accommodation. *See* Section IV.D, *supra*. A plaintiff seeking injunctive relief must also show "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way…[t]hat is,…a real and immediate threat of repeated injury." *Fortyune v. American Multi-Cinema, Inc*., 364 F.3d 1075, 1081 (9th Cir. 2004) (internal quotations omitted).

Here, there is every indication that the Property will remain in, or return to, a non-compliant state in the future if an appropriate injunctive order is not issued. During this case, Defendant has failed to remove the aforementioned/identified barriers, removal of which is readily achievable. *See* UFs 17-24. Plaintiff will not be able to access the Property without difficulty, humiliation, and/or frustration if Defendant is not ordered to remediate the existing violations. *See* UF 11.

Accordingly, an injunction is appropriate to ensure that Defendant complies with the law, and that Plaintiff can enjoy full access of the premises.

**B. Damages**

Plaintiff also seeks statutory damages totaling $16,000 under the UCRA; $4,000 for each of three actual visits and one deterred visit. See UFs 11, 27.

Violations of the UCRA can result in statutory damages "if the violation denied the plaintiff full and equal access to the place of public accommodation on

2:20-cv-10751-GW-GJS

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ

a particular occasion." Cal. Civ. Code § 55.56(a). A denial of full and equal access occurs where a plaintiff "personally encountered" the violation, resulting in "difficulty, discomfort or embarrassment." Cal. Civ. Code § 55.56(b). Plaintiff may recover minimum statutory damages of $4,000 for "each offense" (Cal. Civ. Code § 52(a)), meaning "each particular occasion that the plaintiff was denied full and equal access…." Cal. Civ. Code § 55.56(e). Plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. Code § 55.56(b).

Plaintiff encountered and/or knows of the existing violations (see Sections IV.C., IV.D., supra), including slopes in the disabled parking space and route, failure to provide an accessible route, and inadequate signage. UFs 11-15, 25. Plaintiff is deterred from visiting until violations are remediated. UFs 26-28.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion, issue injunctive relief, and award judgment in favor of Plaintiff and against Defendant in the amount of $16,000.

Dated:  July 16, 2021                THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:    /s/ Anoush Hakimi
       ANOUSH HAKIMI, ESQ.
       Attorney for Plaintiff James Shayler

2:20-cv-10751-GW-GJS

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MSJ