FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 24 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES SHAYLER, an individual, | No. 21-56130 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-10751-GW-GJS |
| v. | |
| 1310 PCH, LLC, a California Limited Liability Company, | OPINION |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Submitted August 31, 2022[*]
Pasadena, California

BEFORE: MILAN D. SMITH, JR. and RYAN D. NELSON, CIRCUIT JUDGES, and GERSHWIN A. DRAIN,[**] DISTRICT JUDGE.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.>

# SUMMARY[***]

## Americans with Disabilities Act / Attorney's Fees

The panel affirmed the district court's order awarding a reduced amount of attorney's fees and costs following the district court's grant of summary judgment in favor of the plaintiff on a claim under the Americans with Disabilities Act.

The plaintiff, a serial ADA litigant, moved for an award of over $34,000 in attorney's fees and costs under 42 U.S.C. § 12205. The district court reduced this award significantly, finding that factors such as the routine nature of the work performed by the plaintiff's attorneys and the lack of meaningful opposition by the defendants warranted the use of a $300/hour "blended billing rate" for all the work performed by counsel, as well as a 65% downward multiplier to the total amount of fees.

The panel held that the district court provided an adequate "concise but clear explanation" of the grounds for its decision and did not abuse its broad discretion because, given the repetitive nature of high-frequency ADA litigation, there was nothing irrational about the district court's conclusions that, in effect, much of the work here could have been performed by junior associates or even paralegals, or that much of the motion practice in the case was superfluous.

## COUNSEL

Anoush Hakimi and Kyle W. Wilson, Law Office of Hakimi & Shahriari, Los Angeles, California, for Plaintiff-Appellant.

Jeffrey C. Bogert, Law Offices of Jeffrey C. Bogert, Los Angeles, California, for Defendant-Appellee.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

M. SMITH, Circuit Judge:

Plaintiff James Shayler, a serial Americans with Disabilities Act (ADA) litigant, has sued defendant 1310 PCH LLC (PCH) for violating the ADA and similar protections under California law. The lawsuit was largely uncontested by PCH, and resulted in summary judgment in Shayler's favor on the ADA claim. After prevailing on the merits, Shayler moved for an award of over $34,000 in attorney's fees and costs. The district court reduced this award significantly, finding that factors such as the routine nature of the work performed by Shayler's attorneys and the lack of meaningful opposition by PCH warranted the use of a $300/hour "blended billing rate" for all the work performed by Shayler's counsel, as well as a 65% downward multiplier to the total amount of fees. Ultimately, the district court awarded just under $10,000 in fees and costs. Shayler appeals, arguing that this downward reduction was unjustified. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Serial ADA Litigants

Congress passed the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, in order to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42

U.S.C. § 12101(b)(1).  "The ADA satisfied the need for meaningful legislation for the protection of individuals with disabilities; however, one of the unforeseen consequences of this statute was the widespread abuse taking form due to the actions of serial ADA plaintiffs."  Phoebe Joseph, Note, *An Argument for Sanctions Against Serial ADA Plaintiffs*, 29 U. Fla. J.L. & Pub. Pol'y 193, 195 (2019).

A private plaintiff suing under the ADA may recover injunctive relief and attorney's fees (plus costs), but not monetary damages.  *See* 42 U.S.C. § 2000a-3(a)-(b).  Despite this limitation, the ability to recover attorney's fees has given rise to a wave of "get-money quick" lawsuits brought by a small number of professional, serial plaintiffs.  Joseph, 29 U. Fla. J.L. & Pub. Pol'y at 196.  A district judge in this circuit has explained the phenomenon like this:

> The scheme is simple: an unscrupulous law firm sends a disabled individual to as many businesses as possible, in order to have him aggressively seek out any and all violations of the ADA.  Then, rather than simply informing a business of the violations, and attempting to remedy the matter through conciliation and voluntary compliance, a lawsuit is filed . . . .  Faced with the specter of costly litigation and a potentially fatal judgment against them, most businesses quickly settle the matter.

*Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 863 (C.D. Cal. 2004) (cleaned up); *see also Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. 2004) (noting that, in ADA cases, "pre-suit settlements do not vest

plaintiffs' counsel with an entitlement to attorney's fees," and that the "current ADA lawsuit binge is . . . driven by . . . the economics of attorney's fees").

To make matters worse, California's Unruh Civil Rights Act, Cal. Civ. Code § 51(f), and the California Disabled Persons Act (CDPA), Cal Civ. Code § 54(c), create private rights of action under state law whenever there has been an ADA violation, and a plaintiff suing for such a violation can recover monetary damages. *See, e.g.*, *Arroyo v. Rosas*, 19 F.4th 1202, 1206 (9th Cir. 2021) (noting that the "net practical consequence" of this statutory confluence "is to create a state law cause of action that permits, for California-based ADA claims, a damages remedy that is not available under the ADA"); *Molski*, 347 F. Supp. 2d at 862-63. California has attempted to limit abusive lawsuits under these statutes by imposing stricter procedural requirements and higher filing fees on "high-frequency litigant[s]" in state court. *Arroyo*, 19 F.4th at 1207 (citing Cal. Civ. P. Code § 425.55). However, plaintiffs can circumvent the restrictions on high-frequency litigants by filing their complaints in federal court, asserting federal question jurisdiction over the ADA claim and supplemental jurisdiction over the state-law claims. *Id.* In light of this procedural oddity, the number of ADA cases in the Central District of California (where this case originated) has ballooned from 3 percent of its civil docket to roughly 20 percent in recent years. *Id.*

4

A hallmark of abusive ADA litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit. *See, e.g.*, Cal Civ. P. Code § 425.55(a)(2) (finding that "these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation"); *Peters v. Winco Foods, Inc.*, 320 F. Supp. 2d 1035, 1040-41 (E.D. Cal. 2004) (noting plaintiff's history of filing "form complaints" and "multiplicitous [sic] 'off the shelf' filings of questionable merit"); Joseph, 29 U Fla. J.L. & Pub. Pol'y at 197 (describing "cookie-cutter lawsuits" with "similar or even identical complaints" (citations omitted)). The ability to file essentially the same complaints over and over again, combined with the hope of intimidating the defendant into an early settlement (or of obtaining a default judgment), allows for a quick recovery of attorney's fees with relatively minimal difficulty. *See, e.g.*, *Molski*, 347 F. Supp. 2d at 863 (describing "cottage industry" of ADA litigants filing lawsuits "requesting damage awards" under state law "that would put many of the targeted establishments out of business" (citation omitted)); *Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1375 (M.D. Fla. 2004) (describing ADA "shotgun litigation," where "the same plaintiffs file hundreds of lawsuits").

## II. Shayler's Case

In November 2020, Shayler sued PCH for ADA and Unruh Act violations, seeking injunctive relief and attorney's fees as well as monetary damages for the Unruh Act claim. The gravamen of the complaint was that PCH owned a property that failed to comply with regulatory requirements regarding accessible parking spaces. At a scheduling conference early in the case, the district court identified Shayler as a "high-frequency litigant" as defined in Cal Civ. P. Code § 425.55(b). The district court later declined to exercise supplemental jurisdiction over the Unruh Act claim, though Shayler's amended complaint "[i]nexplicably" continued to allege it.

About 8 months into the case, Shayler moved for summary judgment. PCH filed a notice of non-opposition to the motion, but Shayler filed a reply brief anyway. The district court granted summary judgment to Shayler on the ADA claim and awarded injunctive relief, but declined to award damages pursuant to the Unruh Act based on its earlier jurisdictional ruling.

Shortly thereafter, Shayler moved for $31,714 in attorney's fees plus $3,185 in costs, for a total award of $34,899. This was based on the work of four attorneys with different hourly rates. The district court broke down the attorney's fees request as follows:

6

| Attorney | Time Spent | Hourly Rate | Total |
|---|---|---|---|
| Anoush Hakimi | 13.6 | $495 | $8,216 |
| Peter Shahriari | 16.6 | $495 | $6,732 |
| Laura Steven | 26.2 | $425 | $11,135 |
| Kyle Wilson | 18.8 | $295 | $5546 |
| | 75.2 | | $31,630[3] |

The district court found that both the hourly rates for the attorneys and the time spent by the attorneys on the case were unreasonable based on the record before it.

First, while acknowledging the attorneys' experience, the district court explained that "these relatively straightforward ADA actions often include boilerplate filings and rarely involve complex legal issues or any difficult factual discovery. Plaintiff's counsel appear to involve two partner-level attorneys for tasks that could have been performed by paralegals or low level associates at substantially lower rates and [with] review[] by an attorney." The district court then "elect[ed] to join several other courts in the Central District by adopting a blended rate of $300 [per hour] that is more commensurate with the complexity level of these ADA cases," citing other recent district court decisions that have applied a $300/hour rate to work performed in similar cases.

Second, the court found that Shayler's lawyers had "devoted an unreasonable amount of time on several tasks that should have been done more efficiently" in light of their experience. For example, the district court found that spending 9 hours on filing the complaint was "excessive" because Shayler's

7

counsel "often . . . files nearly identical complaints . . . in scores of ADA cases." The district court was also flummoxed by the fact that Shayler's counsel had spent 17 hours on the unopposed motion for summary judgment, which included 7 hours expended *after* PCH had notified the court of its non-opposition.[1] After noting other questionable litigation tactics and reiterating that this was a "straightforward" ADA case, the district court then noted that roughly two-thirds of the hours expended by Shayler's attorneys on the case were accrued after PCH had admitted fault.

In light of "the relatively straightforward and repetitive nature of these ADA actions, the fact that [Shayler]'s counsel recorded most of their hours after [PCH] admitted fault and sought to minimize cost, and the number of litigation efforts of counsel which were . . . simply wrong or unnecessary (and which [constitute] a majority of [Shayler]'s counsel's efforts)," the district court applied "a downward 65% multiplier to the requests for fees." Using a blended rate of $300/hour, 75.2 hours of attorney work, and the 65% downward multiplier, the district court calculated the final award of attorney's fees as $7,896, which was substantially less than the $31,185 sought by Shayler. The district court also reduced Shayler's

---

[1] The district court indicated that it was "subtracting" hours for time spent on the complaint and summary judgment motion to arrive at more reasonable time figures. However, the district court did not expressly indicate how these subtractions factored into its ultimate calculation, which still used all 75.2 hours claimed by Shayler as a baseline before applying a 65% downward multiplier, as explained below.

8

award of costs from $3,185 to $1,955, finding that Shayler's request to reimburse costs for a site inspector were unsupported by invoices or a reasonable explanation of the inspector's importance to the case. This resulted in a total award of $9,851, as compared to the $34,899 Shayler had requested. Shayler timely appealed the award.

## STANDARD OF REVIEW

In ADA cases, a prevailing plaintiff may recover "a reasonable attorney's fee." 42 U.S.C. § 12205. A "reasonable attorney's fee" is initially determined by the lodestar method, which multiplies an attorney's reasonable hourly rate by the number of hours reasonably expended on the litigation, though this amount can be adjusted upward or downward based on other factors. *Machowski v. 333 N. Placentia Prop., LLC*, 38 F.4th 837, 840-41 (9th Cir. 2022). We review an award of attorney's fees under the ADA for abuse of discretion, while reviewing de novo any legal questions underlying the fee award. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1157 (9th Cir. 2018).

"The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986),

*amended*, 808 F.2d 1373 (9th Cir. 1987) ("The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation and the amount which would reasonably compensate the attorney."). However, a court abuses its discretion when it fails to identify "the correct legal rule to apply to the relief requested" or applies the correct rule in a way that is illogical, implausible, or unsupported by the facts. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## ANALYSIS

Shayler challenges both the district court's use of a blended billing rate and its use of a 65 percent downward multiplier.[2] Most of his briefing is directed to arguing that the district court inadequately explained its reasons for the billing rate and the multiplier. That approach is understandable because we have not categorically foreclosed the use of blended billing rates or downward multipliers, saying only that these approaches to calculating a fee award must be adequately explained. *See, e.g.*, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th

---

[2] Shayler's opening brief also challenges the district court's refusal to reimburse the cost of the site inspector. Specifically, he argues that the district court's finding that the need for an inspector was "unnecessary" was "unsupported by the factual record." But the district court also denied the reimbursement request simply because "[Shayler] ha[d] not submitted a bill/invoice from the [inspector]." Shayler does not dispute this fact or argue that the district court's reliance on it was improper. Consequently, any challenge to the reduction in the award of costs is waived. *See, e.g., Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016).

Cir. 2014) (vacating fee award because district court failed to explain why it used a $325/hour blended billing rate); *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (upward and downward multipliers are permissible, but must be justified).

Even so, the district court was not required to write the equivalent of a law review article justifying its fee award; it only had to provide a "concise but clear explanation" of the grounds for its decision. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jankey v. Poop Deck*, 537 F.3d 1122, 1133 (9th Cir. 2008) (applying this standard in ADA case); *see also Gates*, 987 F.2d at 1398 (9th Cir. 1992) (a "concise but clear" explanation requires only enough reasoning to enable "meaningful appellate review"). It did so in this case.

To start, Shayler is incorrect to assert that the district court's use of a $300/hour blended billing rate "lacked any explanation or justification." The district court explained that this was a "straightforward" ADA case with boilerplate pleadings, minimal legal complexity, and little in the way of difficult fact discovery. The district court noted that the Department of Justice has compiled precise standards for complying with the ADA, meaning that attorneys need only check to see if the defendant's premises meet these standards. The district court further explained that, given these circumstances, it was unnecessary to staff the case with "two partner-level attorneys" billing out at nearly $500/hour for

11

relatively simple tasks. Finally, it indicated that it agreed with three other district court decisions holding that a $300/hour blended billing rate "is more commensurate with the complexity level of these ADA cases." The decisions cited generally raise points similar to those raised by the district court, namely that serial ADA litigation does not involve particularly complex work justifying partner-level billing rates. *See Langer v. Kha Dinh Nguyen*, No. 8:19-cv-00294-JLS-KES, 2019 WL 7900270, at *6 (C.D. Cal. Nov. 27, 2019) (justifying $300/hour rate by explaining that "five attorneys" were not needed to perform "tasks which seem more suited for paralegals," and citing the "form nature of the Complaint and the case more generally"); *Machowski v. Jacmar Partners III*, No. SACV 21-00135-CJC (JDEx), 2021 WL 2980223, at *1-2 (C.D. Cal. May 27, 2021) (containing similar analysis); *Jones v. Islam*, No. 2:20-cv-11038-JLS-JPR, 2021 WL 3472860, at *8 (C.D. Cal. July 7, 2021) (incorporating by reference similar analysis in *Machowski v. Suite 123 LLC*, No. 8:20-cv-02014-JLS-ADS, 2021 WL 6496266 (C.D. Cal. June 10, 2021)).

The district court's discussion of the unreasonable amount of hours expended by Shayler's attorneys, and why a 65% downward multiplier was appropriate as a result, was even more detailed. The court identified specific line items in the billing record and explained why they reflected unnecessary uses of time by Shayler's attorneys. For example, the court was not persuaded that it took

nine hours to prepare and file a boilerplate complaint, or that it took seventeen hours to draft an unopposed summary judgment motion. The court also denoted how Shayler's attorneys had wasted time on an ex parte subpoena request that was both untimely and substantively meritless. Finally, the district court explained that "nearly two-thirds of the recorded fee hours" (in other words, nearly 67% of the hours) were for work conducted after PCH admitted fault and "agreed to resolve the identified issues while minimizing expenses." Shayler contends that this admission was just "for show" because PCH "did not . . . reach out to negotiate a consent decree" or otherwise reach a settlement agreement. However, the district court's finding was not that PCH had agreed to a precise settlement, but only that it had agreed not to contest liability and that it had agreed in principle to resolve the issues identified by Shayler's complaint. That finding is supported by the record.

These considered explanations make this case very unlike *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 1980), which Shayler relies on heavily. *Camacho* held that the district court abused its discretion by using a $200/hour blended billing rate because, "when the district court held that it would be unreasonable on the facts of this case to award the full hourly rates requested by [the plaintiff's] attorneys, the court did not identify which facts led to this conclusion." *Id.* at 980. Moreover, the court failed to "indicate why an hourly rate of $200 was in line with those prevailing in the community for similar services by

13

lawyers of reasonably comparable skill, experience and reputation." *Id.* (citation and internal quotations omitted). In stark contrast, the district court here gave specific reasons for its decision to use a $300/hour blended rate, and cited other fee awards in the same court that used this same rate in other repeat-player ADA cases.

      Shayler also suggests it was improper for the district court to rely on other court decisions employing a $300/hour rate in ADA cases, citing *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).³ That is an inapt comparison. In *Moreno*, we admonished a district court for effectively "adopting a court-wide policy . . . of 'holding the line' on fees" in civil rights cases at a fixed rate of $250/hour. *Moreno*, 534 F.3d at 1115. *Moreno* explained that while "[d]istrict judges can certainly consider the fees awarded by other judges in the same locality in similar cases," a judge cannot rely on past practice to refuse to use a higher hourly rate for a lodestar calculation in light of changed "economic conditions in the district." *Id.* ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate without regard to any contrary practice."). But the cases cited by the district court in support of its $300/hour rate—all from the Central District of California—were relatively recent (two 2021 decisions, and

---

³ Shayler also makes the questionable argument that the district court erred in relying on these decisions because they were not subject to judicial notice and it is impermissible for the district court to rely on its own independent research. This argument is waived because it was not presented in Shayler's opening brief. *See, e.g.*, *Brown*, 840 F.3d at 1148.

14

one was from 2019), whereas the rate used by the district court in *Moreno* "apparently hadn't changed for 10 years." *Id.* More fundamentally, the district court was not simply "holding the line" on fee awards based solely on a de facto court-wide policy; its choice of a $300/hour blended billing rate was largely based on its finding that this was a run-of-the-mill repeat-player ADA case lacking in legal, factual, or procedural complexity. And *Moreno* itself indicates that it was not wrong for the district court to consider "the fees awarded by other judges in the same locality in similar cases" as additional support for its decision. *Id.*

Finally, the district court's concerns about the lack of complexity with respect to the legal, factual, and procedural issues in this case, as well as its reliance on the use of $300/hour rates in similar cases, track the factors that a court is supposed to consider in calculating a fee award. *See, e.g., Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014) (quoting *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir.1988)) (listing twelve factors, including "the time and labor required," "the novelty and difficulty of the questions involved," "the skill requisite to perform the legal service properly," and "awards in similar cases"). Shayler's opening brief does not dispute the district court's finding that he is a high-frequency ADA litigant, nor does it provide any explanation as to why his case involved more complex issues than the cases relied upon by the district court.

15

In sum, while Shayler may be dissatisfied with the district court's explanations, they are sufficient to undergird its fee award under Ninth Circuit precedent. At bottom, this was a simple, relatively uncontested case. Given the repetitive nature of high-frequency ADA litigation, there was nothing irrational about the district court's conclusions that, in effect, much of the work here could have been performed by junior associates or even paralegals, or that much of the motion practice in the case was superfluous. Consequently, the district court did not abuse its broad discretion, particularly in light of the Central District of California's considerable experience with these kinds of cases. *See Hinkson*, 585 F.3d at 1261 (district court abuses its discretion only when its conclusions are illogical, implausible, or unsupported by the facts); *Gates*, 987 F.2d at 1398 (abuse of discretion standard is highly deferential in the context of fee awards).

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.